UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:	Case No. 22-40755

LYNN BETH BAUM,	Chapter 13

        Debtor.	Judge Thomas J. Tucker
_____/

**OPINION AND ORDER GRANTING MOTION
TO DISQUALIFY DEBTOR'S COUNSEL**

**A. Introduction**

In this Chapter 13 case, the Debtor's attorney is also a pre-petition creditor, holding a claim for attorney fees that is potentially very large, but that is entirely unliquidated and in part contingent. The fees were incurred in representing the Debtor in several years of state court litigation that is not yet completed. The question now before the Court is whether the Debtor's attorney has a disqualifying conflict of interest, such that he may not represent the Debtor in this bankruptcy case. The Court answers this question "yes," and therefore will disqualify the Debtor's attorney.

**B. Procedural background**

This case is before the Court on the motion filed by a creditor, Howard Baum, entitled "Howard Baum's Motion to Disqualify David Findling As Attorney For The Debtor" (Docket # 73, the "Motion"). The Debtor and her attorney objected to the Motion. A party in interest, Alliance Equities, LLC, filed a paper concurring in the Motion.

The Court held a telephonic hearing on the Motion on April 21, 2022. After the hearing, on April 21, 2022, the Court entered an order allowing the Debtor to file certain specified documents, no later than April 27, 2022.[1] The Debtor did file such documents, on April 27,

---

[1] Docket # 101.

2022, and then the Debtor filed corrected versions of such documents on April 29, 2022. Howard Baum filed a supplemental brief on April 29, 2022.[2]

The Court has considered all of the documents that have been filed relating to the Motion, and has considered all of the written and oral arguments of the parties. The Motion is now ready for decision.

The Motion seeks an order disqualifying the Debtor's attorney, David Findling ("Findling"), and Findling's law firm, from representing the Debtor in this Chapter 13 bankruptcy case. Howard Baum argues that Findling and his law firm have a conflict of interest, arising out of their status as pre-petition creditors of the Debtor, and that Mich. Rules Prof. Conduct r.1.7 precludes them from representing the Debtor in this Chapter 13 bankruptcy case.

The Court agrees, and will grant the Motion, for the reasons stated below.

**C. Discussion**

Certain statements made by Findling at the April 21, 2022 hearing, and certain documents filed by Findling after the hearing, have addressed some of the arguments made by the movant, Howard Baum, in support of the Motion. These include the amended Rule 2016(b) Statement filed by the Debtor on April 22, 2022,[3] and the amended Chapter 13 plan filed by the Debtor on April 27, 2022, and its corrected version filed on April 28, 2022.[4] But Findling, and his law firm, The Findling Law Firm, P.L.C. (the "Findling firm") still have a conflict of interest in representing the Debtor in this Chapter 13 bankruptcy case.

**1. The pre-petition claims of Findling and the Findling firm**

---

[2] Docket # 117.

[3] Docket # 102.

[4] Docket ## 105, 111.

**a. Findling's work for the Debtor in extensive pre-petition state court litigation**

The conflict arises from the fact that Findling and the Findling firm are pre-petition creditors of the Debtor. For several years before the Debtor filed this bankruptcy case on February 2, 2022, Findling and the Findling firm represented the Debtor in several complex, related pieces of state court litigation.

All that litigation arose initially from the Debtor's claim that in February 2012, the Debtor told her then-husband, David Baum, and his brother, Howard Baum, that she intended to file for divorce. Shortly after that, the Debtor alleged, David Baum made fraudulent transfers of all of the parties' marital property to companies owned and operated by Howard Baum. The Debtor sought to remedy that. For example, the Debtor filed a fraudulent transfer action against Fraser Equities, LLC ("Fraser"), a company owned and operated by Howard Baum, to recover some of the fraudulent transfers. That action was filed in 2015 in the Oakland County, Michigan Circuit Court, Case No. 2015-149725-CZ (the "Fraser Action"). After a jury trial, the Debtor obtained a judgment against Fraser on September 30, 2019, for $862,278.71.

Findling and the Findling firm represented the Debtor in the Fraser Action, and in other related fraudulent transfer action and collection-related actions, all filed in the state court. The extensive state court litigation continues, and Findling and the Findling firm continue to represent the Debtor in all that litigation.

**b. Findling's two pre-petition fee agreements with the Debtor**

Before the Debtor filed this bankruptcy case, she and the Findling firm had entered into two retainer agreements. The first of these was a contingent fee agreement dated January 13, 2015 (the "Contingent Fee Agreement"), under which the Findling firm agreed to represent the Debtor in the following matter:

> . . . in the recovery of funds transferred to a third party or parties prior to [the Debtor's] divorce at issue in Lynn Beth Baum v. David Mark Baum, Case Number 2012-795996-DM, and Howard Baum v Lynn and David Baum, Case Number 2012-128166-CK.[5]

The fee for this representation was to be "33% of the total amount recovered."

The second retainer and fee agreement was an hourly-rate agreement, dated October 29, 2019 (the "Hourly Rate Agreement"). This second agreement supplemented, but did not replace, the Contingent Fee Agreement. The work covered by the Hourly Rate Agreement was described on the first page of the agreement, as follows:

> Client is presently represented by Attorney pursuant to a Contingent Fee Agreement dated January 13, 2015 with regard to the recovery of funds transferred to a third party or third parties prior to her divorce in Lynn Baum v David Baum, et. al, Case No 2015-149725-CZ (the "Action"). A final judgment in the Action was entered by the Circuit Court on October 29, 2019.
>
> Client seeks to retain Attorney to represent her in separate related claims for criminal contempt and Proceedings Supplemental to Judgment in the Action (the "Matters"). Client agrees to retain Attorney on an hourly basis with respect to all of the Matters.[6]

It is undisputed that to date, Findling and the Findling firm have not yet recovered any money for the Debtor, so there is not yet any fee owing to Findling and the Findling firm under the Contingent Fee Agreement. So in this bankruptcy case, Findling and the Findling firm have a contingent and unliquidated claim against the Debtor for a fee under the Contingent Fee Agreement.

With respect to fees under the Hourly Rate Agreement, Findling stated during the April

---

[5] A copy of the Contingent Fee Agreement is attached as Exhibit A to the Motion (Docket # 74 at pdf pp. 10-11).

[6] A copy of the Hourly Rate Agreement is attached as Exhibit C to the Debtor's response to the Motion (Docket # 96-3).

21, 2022 hearing that he and his firm have never actually billed the Debtor for any fees, nor has the Debtor ever paid any fees, even though Findling has done years of work in the state court litigation matters covered by the Hourly Rate Agreement. At the hearing, Findling stated that he did not know how much the Debtor owes under the Hourly Rate Agreement. And he asknowledged that there is overlap between the work described and covered by the Contingent Fee Agreement, on the one hand, and the work described and covered by the Hourly Rate Agreement. So in this bankruptcy case, Findling and the Findling firm have an unliquidated claim for fees against the Debtor under the Hourly Rate Agreement, the amount of which is *unknown* by both Findling and the Debtor.

With respect to the claims for fees owing to Findling and the Findling firm under the above two pre-petition fee agreements, Findling claims to have an attorney's lien, based on Michigan common law, against any funds recovered for the Debtor. Based on that lien, Findling and his firm claim to be secured creditors of the Debtor.

### c. Findling's proof of claim filed in this bankruptcy case

The claims against the Debtor of Findling and the Findling firm to fees, based on the Contingent Fee Agreement and the Hourly Rate Agreement, arose pre-petition, and are pre-petition claims. Findling does not dispute this. And on April 13, 2022, Findling and the Findling firm filed a joint proof of claim in this case (Claim No. 7-1), in the amount of $862,729.00. The claim is explicitly based on the two pre-petition fee agreements, and states that the claim is entirely secured, based on an "[a]ttorney's common law charging lien on [the] Debtor's litigation recovery."

Findling and the Debtor originally agreed that Findling's fee for representing the Debtor

in this Chapter 13 bankruptcy case would be a flat fee of $4,000.00.[7]  But as Findling stated during the April 21, 2022 hearing, Findling is now waiving any claim for such fees.  This is confirmed by the amended Rule 2016(b) Statement filed on April 22, 2022.[8]

**d. The Debtor's post-hearing, amended Chapter 13 plan**

During the April 21, 2022 hearing, Findling stated that the Debtor and he had agreed, just that morning, for the Debtor to file an amended Chapter 13 plan, in which the pre-petition fee claims of Findling and his firm would be subordinated to the claims of all other creditors, such that no fees would be paid to Findling or the Findling firm unless and until all other allowed claims in the case were paid in full.

The amended plan filed by the Debtor after the hearing states that "[t]he secured claim of The Findling Law Firm, PLC is subordinated.  It will be paid outside the plan directly by the Debtor."[9]

This language may be an attempt to embody the subordination described by Findling during the April 21 hearing.  But the language is less than clear about that.  It certainly could be clearer, (1) in stating what claim or claims the Findling firm's secured claim is subordinated to; (2) in stating that the entire claim of the Findling firm is subordinated (not just the part of the claim ultimately determined to be secured under 11 U.S.C. § 506(a)(1), as opposed to unsecured); (3) what it means when it says the claim will be paid "outside the plan;" and (4) when the claim is to be paid.

**e. The purported new "third" fee agreement just made, post-petition, by Findling and the Debtor**

---

[7] *See* Rule 2016(b) Statement, filed March 1, 2022 (Docket # 23 at pdf pp. 33-34).

[8] Docket # 102.

[9] Amended plan (Docket # 111) at pdf p. 6.

6
22-40755-tjt    Doc 121    Filed 05/06/22    Entered 05/06/22 14:00:23    Page 6 of 14

During the April 21, 2022 hearing, Findling stated that he and the Debtor may enter into an amended fee agreement. On April 28, 2022, the Debtor filed an amended fee agreement, dated April 27, 2022 (the "Third Fee Agreement").[10] This Third Fee Agreement, which was signed on April 27, 2022 by both the Debtor and the Findling firm, purports to "replace and supersede" all previous fee agreements, including specifically the Contingent Fee Agreement and the Hourly Rate Agreement.[11] This agreement recites that according to the Findling firm's records, "over $485,000 in hourly billing[s] were generated since the effective date of the [Hourly Rate Agreement]."[12] And this agreement provides for a 50% contingent fee, instead of the pre-petition fee arrangement, which was a combination of a 33% contingent fee plus an hourly rate fee. The 50% contingent fee is to be "fifty percent (50%) of the total amount recovered" in "the Recovery Actions."[13] The "Recovery Actions," it appears, include all of the pending state court proceedings that have been brought to date on behalf of the Debtor by Findling and the Findling firm.[14]

Because it was made while this Chapter 13 bankruptcy case was pending, this Third Fee Agreement cannot be effective unless and until all parties in interest are given notice of the agreement and an opportunity to object to it, and if any party objects, the Court has held a hearing and entered an order authorizing the Debtor to enter into the agreement. *See* 11 U.S.C. § 363(b)(1); *In re TAJ Graphics Enters., LLC*, 601 B.R. 451, 479-80 (Bankr. E.D. Mich. 2019).

---

[10] Docket # 109, Ex. A.

[11] *See id.* at 2, Recital q; 3.

[12] *Id.* at 2, Recital l.

[13] *Id.* at 5, ¶ B.1.

[14] *See id.* at 2, ¶ 6; 7 (Table A).

This is required under § 363(b)(1), and this Court's local rules, *see TAJ Graphics*, 601 B.R. at 479, because entering into the Third Fee Agreement would be the "use" by the Debtor, "other than in the ordinary course of business" of "property of the estate."[15] It is the "use" of the Debtor's claims in the pending state court litigation, which are property of the bankruptcy estate, because the Third Fee Agreement diverts 50% of all recoveries on those claims to the payment of fees to the Findling firm. As a result, § 363(b)(1) applies to the Third Fee Agreement. This means that the notice and hearing provisions of that Code section, and this Court's related local rules, apply.

As of this writing, at least, the Debtor has not filed a motion seeking authority to enter into the Third Fee Agreement.

The Third Fee Agreement does state, in substance, that the payment of the Findling firm's fees will be subordinated to the full payment of all other claims in this case, in language that does not appear in the Debtor's amended plan.[16]

**2. Applicable rules**

The dispute over disqualification concerns the following bolded language in Rule 1.7(b) of the Michigan Rules of Professional Conduct:

> **Rule 1.7. Conflict of Interest: General Rule.**
> . . . .

---

[15] Section 363(b)(1) states, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," and Code § 1303 gives the debtor in a Chapter 13 case "the rights and powers of a trustee under," among other sections, § 363(b). *See* 11 U.S.C. §§ 363(b)(1), 1303.

[16] The Third Fee Agreement states that "[the Findling firm] agrees that the secured and unsecured creditors' claims must be fully paid in [the Debtor's] confirmed plan prior to it being eligible to be paid. Once the creditors of [the Debtor's] Chapter13 plan are fully paid, [the Findling firm] will be paid directly by [the Debtor] and not by the Chapter 13 trustee." Third Fee Agreement (Docket # 109, Ex. A) at 5, ¶ B.3.

> (b) **A lawyer shall not represent a client if the representation of that client may be materially limited by** the lawyer's responsibilities to another client or to a third person, or by **the lawyer's own interests**, unless:
>
> > (1) the lawyer **reasonably** believes the representation will not be adversely affected; and
> >
> > (2) **the client consents after consultation**. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Mich. Rules Prof. Conduct r.1.7(b) (emphasis added).

If Findling individually is disqualified under Rule 1.7(b) from representing the Debtor in this case, then his firm also must be disqualified. *See* Mich. Rules of Pro. Conduct r.1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, . . .").

These rules of professional conduct, like all of the Michigan Rules of Professional Conduct, apply to all attorneys practicing in this Court. *See* E.D. Mich. LR 83.22(b); E.D. Mich. LBR 9029-1(a). And as the Official Comment to Rule 1.7 indicates, the court may raise Rule 1.7(b) on its own, and an opposing party in litigation may seek disqualification of opposing counsel under certain circumstances:

> *Conflict Charged by an Opposing Party.*
>
> Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. **In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility.** In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. See MCR 6.101(C)(4). **Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be**

> **viewed with caution, however, for it can be misused as a technique of harassment.** See Scope, ante, p M 1-18.

Mich. Rules Prof. Conduct r.1.7(b) cmt. (emphasis added).

### 3. Application of Rule 1.7(b) to this case

It appears that the Debtor, Findling, and the Findling firm now intend to seek confirmation of a Chapter 13 plan under which all allowed claims of creditors are paid in full, with 3% interest per annum, before any attorney fees are paid to Findling or the Findling firm. That is certainly helpful to Howard Baum and the other creditors in this bankruptcy case. Based on the proposed subordination of the Findling firm's pre-petition fee claim, and the complete waiver of fees for Findling's work in this bankruptcy case, the Debtor and Findling argue that no other creditor in this case can be prejudiced by what happens with Findling's pre-petition fee claim. Howard Baum does not concede that point. But it is not necessary for the Court to decide that point, because Findling's disqualification is required in any event.

Even if there is no danger of prejudice to the other creditors, there still remains the problem of Findling's conflict with his own client, the Debtor. This is demonstrated by, among other things, the Third Fee Agreement itself, a post-petition agreement just made but not yet authorized by this Court. As the Debtor's attorney in this Chapter 13 case, Findling and his firm have just negotiated with their own client what amounts to a settlement of their pre-petition claim. Depending on how much is ultimately recovered on the Debtor's pre-petition state court claims, this settlement (the Third Fee Agreement, 50% contingent fee) may have the net effect of significantly increasing, or significantly decreasing, the fees that the Debtor pays to Findling and his firm, compared to what the Debtor otherwise would be obligated to pay under her two pre-petition fee agreements with Findling's firm (33% contingent fee plus some unliquidated amount of hourly rate-based fees). The Third Fee Agreement might be a good deal for the Debtor, or it

might not.

As the Debtor's attorneys in this bankruptcy case, it is the duty of Findling and his firm to give the Debtor advice and representation about whether to object to claims, whether to settle claims, and on what terms to settle claims. This is a normal part of the duties of any attorney representing a debtor in a Chapter 13 bankruptcy case. And this includes the pre-petition claim of Findling and his firm. Indeed, Findling and his firm have expressly undertaken such duty, in their agreement to represent the Debtor in this bankruptcy case. In both the original and amended versions of the Rule 2016(b) Statement, signed by both the Debtor and Findling, Findling agreed "to render legal service for all aspects of the bankruptcy case," including a non-exhaustive list of matters, and with no excluded matters.[17] And in the Third Fee Agreement, the Debtor and the Findling firm agreed to provide the Debtor with a very comprehensive list of services in the Debtor's Chapter 13 case, with no relevant exclusions, including:

> Analysis of, and objections to, specific claims, including preparation and filing of objections, negotiations with claimant, attendance at claim objection hearing, and submission of dispositive order.[18]

In any event, Findling and the Findling firm could not shirk their duties to advise and represent the Debtor regarding the claims of creditors, including advising the Debtor about their own pre-petition claim.

This is one way, at least, in which Findling and his firm have a conflict of interest that implicates Rule 1.7(b). And this conflict remains, even after all of Findling's post-petition efforts to make the conflict problem go away. (The Court assumes that such post-petition efforts

---

[17] Docket ## 23 at pdf pp. 33-34, ¶¶ 4, 5; Docket # 102, ¶¶ 4, 5.

[18] Third Fee Agreement (Docket # 109, Ex. A) at 3-4, ¶ A.1.

by Findling all have been made in good faith.)

If this were a Chapter 11 case, Findling and his firm could not be approved under 11 U.S.C. § 327(a) to represent the Debtor in conducting this bankruptcy case, because they could not meet the requirements of that section that they be "disinterested" and that they "not hold or represent an interest adverse to the estate." *See* 11 U.S.C. §§ 327(a), 101(14)(A) (definition of the term "disinterested person" requires that the person "is not a creditor"). They perhaps could be approved for appointment as special counsel under 11 U.S.C. § 327(d), solely for the specified purpose of representing the Debtor in the pending state court litigation.

The Debtor argues that § 327(a) does not apply to a Debtor's attorney in a Chapter 13 case. And Howard Baum does not contend that it does; rather, he disclaims any reliance on § 327(a). It is unnecessary to decide whether § 327(a) applies to the Debtor's attorney in a Chapter 13 case, because in this case the Debtor's attorney must be disqualified on the other grounds.

Rule 1.7(b) does apply, and requires disqualification. In the words of Rule 1.7(b), Findling's and the Findling firm's representation of the Debtor in this Chapter 13 bankruptcy case "may be materially limited by . . . the lawyer's own interests." Indeed, such representation clearly *is* materially limited by Findling's and the Findling firm's own interests, namely by their pre-petition claims.

The Debtor and Findling argue that the exception in Rule 1.7(b) applies — namely, that Findling "reasonably believes that representation will not be adversely affected" *and* "the client consents after consultation." The stated subjective belief by Findling that his representation will not be adversely affected, however, is not objectively reasonable in this case.

In this case the Debtor needs, and her attorney has a duty to provide, independent and

objective advice and representation about numerous issues regarding the pre-petition fee claims of Findling and the Findling firm. And it is not objectively reasonable to believe that Findling and the Findling firm can give such independent, objective advice and representation to the Debtor. The issues include, among possible other issues, the following:

    1. Whether the two pre-petition fee agreements are executory contracts that the Debtor may reject, under 11 U.S.C. § 365(a);[19]

    2. If so, whether the Debtor *should* reject either or both of those contracts;

    3. Whether to give proper notice of, and to seek this Court's authority under § 363(b)(1) to enter into, the Third Fee Agreement;

    4. Whether to seek to enter into some other amended fee agreement, rather than the Third Fee Agreement;

    5. Whether to file an objection to the proof of claim filed by the Findling firm;

    6. If so, when to file such claim objection and what to argue in the claim objection;

    7. How much, if anything, is owed by the Debtor as of the bankruptcy petition date under the Hourly Rate Agreement, including several sub-issues, such as (a) what is the applicable and *reasonable* hourly rate under the Hourly Rate Agreement; (b) how much is the billable time by Findling and the Findling law firm that is applicable under the Hourly Rate Agreement, and how much of that time is *reasonable*; (c) how does the Hourly Rate Agreement interact with the Contingent Fee Agreement, given that some of the work done by Findling and the Findling firm on the state court litigation is allocable to (and therefore limited by) the 33% Contingent Fee Agreement, rather than to the Hourly Rate

---

[19] Under 11 U.S.C. § 1322(b)(7), for example, a Chapter 13 plan may provide for the rejection or assumption of executory contracts, subject to § 365.

Agreement.

8. Whether to enter into a settlement with Findling and the Findling firm regarding their fee claims, and if so, on what terms, and whether and when to seek this Court's approval of such a settlement under Fed. R. Bankr. P. 9019.

In short, Findling and the Findling firm have a conflict of interest in representing the Debtor in this Chapter 13 case that cannot be waived. Rule 1.7(b) requires disqualification. The Debtor must find new counsel to advise and represent her in this bankruptcy case.[20]

**D. Conclusion**

For the reasons stated in this Opinion,

IT IS ORDERED that:

1. The Motion (Docket # 73) is granted.

2. Findling and the Findling firm are disqualified from representing the Debtor Lynn Beth Baum in this bankruptcy case, effective immediately.

3. If the Debtor wishes to have an attorney represent her in this bankruptcy case, she must obtain a new attorney, and such attorney must enter his/her appearance and file a Rule 2016(b) Statement, all no later than May 27, 2022.

4. If the May 27, 2022 deadline is not met, the case will continue thereafter, with the Debtor representing herself, unless and until an attorney for the Debtor enters his/her appearance and files a Rule 2016(b) Statement.

**Signed on May 6, 2022**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[20] In so ruling, the Court does not rule or mean to imply that there is any basis to disqualify Findling and the Findling firm from continuing to represent the Debtor in the state court litigation.