UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                            Case No. 22-40755

LYNN BETH BAUM,                                   Chapter 13

                Debtor.                Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE CHAPTER 13 TRUSTEE'S "CORRECTED MOTION REGARDING APPLICATION OF 11 U.S.C. §349(b)(3) AND §1326(a)(2) TO FUNDS PRESENTLY HELD BY THE ESTATE"**

**I. Introduction**

In this dismissed Chapter 13 case, the standing Chapter 13 Trustee has over $135,000 in funds on hand, and has filed a motion that requires the Court's direction as to how the Trustee must disburse those funds. The Trustee's motion, as well as responses filed to the motion, raise several issues that the Court must decide, including issues under 11 U.S.C. §§ 349(b)(3) and 1326(a)(2), and 28 U.S.C. § 586(e)(2).

This case is before the Court on the motion filed by the Chapter 13 Trustee, entitled "Corrected Trustee's Motion Regarding Application of 11 U.S.C. §349(b)(3) and §1326(a)(2) to Funds Presently Held by the Estate" (Docket # 281, the "Motion"). The Debtor filed an objection to the Motion.[1] The creditor, "David Findling of the Findling Law Firm, PLC" ("Findling") also filed an objection to the Motion, which seeks denial of the Trustee's Motion and certain other relief.[2] No other responses were filed to the Motion.

---

[1] Docket # 288.

[2] Docket # 285.

The Motion currently is scheduled for a telephonic hearing to be held on May 11, 2023 at 2:00 p.m. The Court now concludes that a hearing on the Motion is not necessary, that the Motion should be denied, and that Findling's request for certain other relief should be denied.

## II. Background and facts

The Debtor filed this Chapter 13 case on February 2, 2022. Thirteen months later, on March 8, 2023, the Debtor voluntarily dismissed this case.[3] While the case was pending, the Debtor filed a proposed plan and then later filed three amended plans.[4] No plan was confirmed before the case was dismissed.

During the 13 months the case was pending, the case was very contentious, and the Court was required to rule on numerous complex motions filed by various parties including the Debtor.[5]

During the pendency of the case, the Debtor's initial plan, and all three of the Debtor's amended plans, proposed to pay a 100% dividend to non-priority unsecured creditors, and all three of the Debtor's amended plans also proposed to pay such creditors interest of 3% per annum.[6] Beginning with the Debtor's first amended plan filed April 27, 2022,[7] each of the Debtor's three amended plans proposed to make small monthly payments to the Trustee, plus

---

[3] *See* Docket ## 276, 277.

[4] Docket ## 22, 105, 111, 160.

[5] Several of the Court's rulings in this case, and in a related adversary proceeding, are reflected in opinions and orders that were published, including the following: *Baum v. Baum* (*In re Baum*), 638 B.R. 748 (Bankr. E.D. Mich. 2022); *In re Baum*, 639 B.R. 721 (Bankr. E.D. Mich. 2022); *In re Baum*, 645 B.R. 585 (Bankr. E.D. Mich. 2022); and *In re Baum*, 649 B.R. 25 (Bankr. E.D. Mich. 2023).

[6] *See* Docket ## 22, 105, 111, 160.

[7] Docket # 105.

2

several lump-sum payments to the Trustee, totaling $194,699.36. All of the lump sum payments were to come from proceeds of pre-petition claims filed in state court by the Debtor against various parties.

Several payments were made to the Chapter 13 Trustee, by the Debtor and/or on the Debtor's behalf. As described in the Trustee's Motion, the payments were as follows:

> 3. The estate received a lump-sum payment of $35,398.23 on 5/23/2022 directly from the Debtor.
>
> 4. The estate received the second payment of $12,766.33 on 11/1/2022 pursuant to this court's order authorizing compromise of a state court claim entered on 7/15/2022 (Doc 157).
>
> 5. The estate received the third payment in the amount of $86,521.54 on 12/12/2022 directly from the Oakland County Circuit Court.
>
> 6. The estate received another lump sum payment of $12,500 on 12/27/23 pursuant to this court's order authorizing compromise of a state court claim (Doc 258).
>
> 7. The Debtor also remitted payments from a wage order entered on 7/20/22 (Doc 162) of approximately $279.96.
>
> 8. The estate currently has funds on hand totaling $135,491.41 . . .[8]

The payments listed by the Trustee total $147,466.06. The Trustee's statement that she has funds on hand totaling $135,491.41 reflects the fact that the Trustee has collected a statutory

---

[8] Mot. (Docket # 281) at 1 ¶¶ 3-8. According to Findling's response, some of the actual payment amounts are slightly different from the amounts stated by the Trustee. For example, Findling says that the direct payments from the Debtor to the Trustee under a wage order, ¶ 7 in the Trustee's list above, totaled $303.04, which is $23.08 more than the $279.96 amount stated by the Trustee. *See* Findling Resp. (Docket # 285) at pdf p. 4. The Court will assume for purposes of this Opinion that the Trustee's numbers are correct, because the difference is not material for purposes of the Court's ruling on the Trustee's Motion. The Court trusts that the Trustee will make sure that all the numbers are accurate before making any distributions and before filing her final report in this case.

fee of roughly 8% of the funds received, in the amount of $11,974.65.⁹ That fee is discussed later in this Opinion.

Of the payments listed by the Trustee, the payments in ¶¶ 3 and 7 in the Trustee's list were payments made directly by the Debtor (the "Debtor-Direct Payments"); and the payments in ¶¶ 4 and 6 were proceeds from the settlement of certain pre-petition claims the Debtor had against third parties (the "Settlement Payments"), which settlements this Court approved. The payment in ¶ 5 of the Trustee's list came from the Oakland County Circuit Court (the "Circuit Court Payment"), and was clearly intended by the state court as a payment for the benefit of the Debtor, as a partial payment on a judgment the Debtor obtained pre-petition.¹⁰

**III. Jurisdiction**

The Trustee's Motion and the responses filed by the Debtor and Findling require the Court to decide certain issues, discussed below, that affect how the Trustee must disburse the funds she has on hand in this now-dismissed Chapter 13 case.

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and E.D. Mich. LR 83.50(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O), because it is a "matter[] concerning the administration of the estate," and because it is a proceeding "affecting . . . the adjustment of the debtor-creditor . . . relationship[.]"

---

⁹ Eight percent of the $147,466.06 in funds the Trustee says she received in this case equals $11,797.28, which is $177.37 lower than the fee that the Trustee indicates says she has collected.

¹⁰ The Debtor and Findling have demonstrated this, and the Trustee has offered nothing that would dispute or contradict this. *See*, *e.g.*, Ex. B to Findling Resp. (Docket # 285) at pdf p. 25; Ex. A to Debtor's Resp. (Docket # 288) at pdf p. 4.

4

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans–Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009) (citing *Mich. Emp. Sec. Comm'n v. Wolverine Radio Co., Inc.*, 930 F.2d 1132, 1144 (6th Cir. 1991)). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, namely, Bankruptcy Code §§ 349 and 1326. And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## IV. Discussion

### A. The relief requested by the Trustee's Motion

The Trustee's Motion seeks an order requiring that she return the Settlement Payments and the Circuit Court Payment to the Oakland County Circuit Court, rather than to the Debtor. In support of this argument, the Trustee cites 11 U.S.C. § 349(b)(3) and an unreported decision by a judge of this Court in the case of *In re Fox*, Case No. 19-50286-pjs.[11]

The Debtor and Findling disagree with the Trustee on this issue, and they argue that none of the funds should be paid to the Oakland County Circuit Court. This Court agrees, and concludes that all of the funds at issue, and all other funds the Trustee has on hand, should and must be returned to the Debtor, subject only to the exceptions noted below.

Section 349(b) states, in pertinent part:

---

[11] The Trustee apparently is citing an order filed in the *Fox* case on December 23, 2019, a copy of which is attached as Exhibit C to Findling's response (Docket # 285) at pdf p. 27. The order is on file at Docket # 126 in the *Fox* case.

> **Unless the court, for cause, orders otherwise**, a dismissal of a case other than under section 742 of this title—
>
> . . .
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b) (emphasis added). It would not make sense to require the Trustee to return any of the funds at issue to the Oakland County Circuit Court, or to the parties who paid the Settlement Payments to the Trustee. As the Debtor and Findling have demonstrated, the funds that came to the Trustee from the Oakland County Circuit Court were clearly intended as a payment for the benefit of the Debtor, as partial payment on a judgment the Debtor obtained pre-petition. And the settlement funds paid to the Trustee were the result of the settlements of certain of the Debtor's claims that were property of the bankruptcy estate, and which settlements this Court approved.

For purposes of § 349(b)(3), "[i]mmediately before the commencement of" this bankruptcy case, the Circuit Court Payment and the Settlement Payment either were not "vested" in anyone, because the payments themselves arose only post-petition, or they were "vested" in the Debtor. The state law claims from which these funds arose, however, clearly were vested in the Debtor immediately before this bankruptcy case was filed. In any event, it would not make sense for the Court to order the Trustee now to return these funds to anyone other than the

Debtor. Neither the Oakland County Circuit Court nor the settlement parties have any interest in or basis for obtaining any of these funds back.[12]

As a result, the Court finds that there is "cause," within the meaning of § 349(b), to order, and the Court will order, that all of these funds are now "vested" in the Debtor, and therefore must be returned to the Debtor, not to the Oakland County Circuit Court or to any settlement party other than the Debtor.

Based on this, and based on 11 U.S.C. § 1326(a)(2) at least in part, the Court will order that the Trustee pay to the Debtor all of the funds the Trustee has received in this case, from all sources, including the funds identified in ¶¶ 3-8 of the Trustee's Motion, quoted above, subject only to the following exceptions: first, the Trustee must pay any and all administrative expenses allowed under 11 U.S.C. § 503(b), including the allowed fees and expenses of the Debtor's attorney in the amount of $31,468.30;[13] and second, the Trustee must retain the Trustee's percentage fee collected under 28 U.S.C. § 586(e)(2), calculated based on all funds received by the Trustee in this case.

**B. The relief Findling seeks**

   **1. Findling's lien**

In his response to the Trustee's Motion, Findling argues that based on Findling's claimed attorney lien in the proceeds of the Debtor's state court actions, the Trustee should make the payment of funds representing such proceeds payable jointly to the Debtor and to Findling. The

---

[12] The Court's ruling in this case is not inconsistent with the ruling in the *Fox* case cited by the Trustee, but if and to the extent today's ruling were inconsistent with *Fox*, the Court would respectfully disagree with the ruling in *Fox*.

[13] *See* the fee order filed on April 18, 2023 (Docket # 290).

Court disagrees, for the following reasons. First, as the Court has ruled above, such proceeds are vested in the Debtor. They are not vested to any extent in Findling, even though they may be encumbered by Findling's attorney lien.

Second, the amount of fees owing to Findling for his work on the Debtor's state court actions, which is the maximum value of Findling's claimed lien, has not been determined in this bankruptcy case, and will not be determined in this bankruptcy case, now that this case has been dismissed.[14] Rather, the amount of such fees, and therefore the validity and value of any lien Findling may have, is now a matter that should and must be determined by an appropriate non-bankruptcy court, if Findling and the Debtor cannot agree on such fee amount and value.

Third, if and to the extent Findling has a valid lien in the proceeds of the Debtor's state court litigation, then that lien will continue to apply to the state court litigation proceeds that the

---

[14] Findling filed a proof of claim in this case, Claim No. 7-1, in the amount of $862,729.00, and claiming that the entire claim was secured. But the Chapter 13 Trustee objected to that claim on February 23, 2023 (Docket # 270), seeking disallowance of the claim. The Court had not heard or ruled on that claim objection as of the time this case was dismissed on March 8, 2023. As a result, Findling's claim in this case cannot be deemed allowed, under 11 U.S.C. § 502(a) or otherwise, either as of the time the case was dismissed, or as of now.

In a motion filed on February 10, 2023, Findling stated that the fees and costs he and his law firm were currently owed total only $118,932.69. See "Motion to Prohibit or Condition the Chapter 13 Trustee's Use of the Cash Collateral of the Secured Creditors, Attorney David Findling and the Findling Law Firm, PLC" (Docket # 266) at 2 ¶ 8; Brf. in Supp. (Docket # 267) at 12.

In the Court's May 6, 2022 Opinion, regarding the Court's disqualification of Findling as the Debtor's counsel in this bankruptcy case, the Court discussed Findling's claim. That discussion described the two pre-petition fee agreements between the Debtor and Findling, and also a post-petition fee agreement between Findling and the Debtor. The Opinion also indicated that there was some uncertainty about how much in fees the Debtor owed, or would owe, to Findling. See In re Baum, 639 B.R. 721, 723-27, 729-30 (Bankr. E.D. Mich. 2022).

Trustee will pay over to the Debtor. This will leave Findling's lien intact, to the extent of its amount and validity.

For these reasons, even if the Court possibly could conclude that somehow the state court litigation proceeds paid to the Trustee were in part "vested" in Findling pre-petition, within the meaning of 11 U.S.C. § 349(b)(3), to the extent of the value of Findling's claimed attorney lien, the Court would find that cause exists to order, as it will order, that all such litigation proceeds are vested solely in the Debtor, even though they may be subject to an attorney lien in favor of Findling. It follows from this that the Trustee must pay all funds on hand solely to the Debtor, subject to the exceptions stated above.

**2. Findling's disgorgement argument**

In the response to the Trustee's Motion, Findling also seeks relief relating to the percentage fee the Chapter 13 Trustee has "collect[ed]" under 28 U.S.C. § 586(e)(2), which is 8% of the funds that have been paid to the Trustee in this case.[15] Findling asks the Court to order the Trustee to return all of that percentage fee to the Debtor, based on 11 U.S.C. § 1326(a)(2), because this case was dismissed without any plan being confirmed ("Findling's Disgorgement

---

[15] In pertinent part, 28 U.S.C. § 586(e)(2) requires a Chapter 13 standing trustee to collect a "percentage fee," defined in § 586(e)(1), "from all payments received by such [trustee] under plans in cases under . . . chapter 13 of title 11 for which such individual serves as standing trustee." 28 U.S.C. § 586(e)(2).

9

Argument").¹⁶ The Trustee disputes this argument, and also argues that Findling lacks standing to make this argument and seek this relief.¹⁷

The Court concludes that Findling does have standing to make the argument and seek such relief. Findling claims to have an attorney lien in a substantial amount of the funds that were paid to the Trustee in this case. The outcome on Findling's Disgorgement Argument will directly affect the amount of such funds the Trustee will pay to the Debtor, rather than retain, and therefore the outcome will directly affect the value of Findling's collateral. This is a sufficient pecuniary interest in the outcome to give Findling standing.

While Findling has standing, Findling's Disgorgement Argument fails on the merits.

The issue, and the two main statutes involved, are described in a recent decision of the United States Court of Appeals for the Tenth Circuit, as follows:

> A Chapter 13 debtor makes payments to a trustee who then disburses those payments to creditors according to a confirmed reorganization plan. A Chapter 13 standing trustee is compensated through fees he collects by taking a percentage of these payments the trustee receives from the debtor. 28 U.S.C. § 586(e)(2) directs that the standing trustee "shall collect" his fee "from all payments received ... under" Chapter 13 reorganization plans for which he serves as trustee. 11 U.S.C. § 1326(a)(1) provides that a Chapter 13 debtor "shall commence making payments" to the standing trustee within thirty days of the date the debtor files a proposed reorganization plan. Often these payments begin before the confirmation hearing on the proposed plan occurs. In light of that, 11 U.S.C. § 1326(a)(2) directs the standing trustee to "retain" these

---

¹⁶ In pertinent part, 11 U.S.C. § 1326(a)(2) requires a Chapter 13 trustee to retain any payment that is "proposed by the plan" and made under § 1326(a)(1)(A), "until confirmation or denial of confirmation." Then, "[i]f a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to [§ 1326(a)(3)] to the debtor, after deducting any unpaid claim allowed under section 503(b)." 11 U.S.C. § 1326(a)(2).

¹⁷ *See* Trustee's Reply (Docket # 291).

10

> pre-confirmation payments until the confirmation hearing, when the proposed reorganization plan is either confirmed or confirmation is denied. Id. § 1326(a)(2). "If a plan is confirmed, the trustee shall distribute any such [pre-confirmation] payment in accordance with the plan ...." Id. But "[i]f a plan is not confirmed, the trustee shall return any such [pre-confirmation] payments ... to the debtor." Id. The question presented here is: If a plan is not confirmed, can the standing trustee deduct and keep his fee before returning the rest of the pre-confirmation payments to the debtor or must the trustee instead return the entire amount of pre-confirmation payments to the debtor without deducting his fee?

In re Doll, 57 F.4th 1129, 1134 (10th Cir. 2023). In the Doll case, the Court of Appeals answered this question in a way that favors Findling's position:

> We conclude that, read together, 28 U.S.C. § 586(e)(2) and 11 U.S.C. § 1326(a)(2) unambiguously require the trustee to return the pre-confirmation payments to the debtor without deducting the trustee's fee when a plan is not confirmed.

Id. at 1134-35.[18]

While the Doll case favors Findling's position, the cases on this issue are split. On the one hand, Doll and some other cases support Findling's Disgorgement Argument. They hold that when a Chapter 13 case is dismissed without a plan having been confirmed, § 1326(a)(2) requires the Trustee to return to the Debtor all funds the Debtor paid to the Trustee under the Debtor's proposed plan, without retaining any of the percentage fee the Trustee collected under 28 U.S.C. § 586(e)(2). See, e.g., In re Acevedo, 497 B.R. 112, 114 (Bankr. D.N.M. 2013); In re Lundy, No. 15-32271, 2017 WL 4404271, at *5-9 (Bankr. N.D. Ohio Sept. 29, 2017).

Other cases support the Trustee's position, and interpret the statutes to mean that the Trustee retains the percentage fee collected under § 586(e)(2), and is not required to refund that

---

[18] On April 27, 2023, the Court of Appeals in the Doll case denied a petition for rehearing and rehearing en banc.

11

fee to the Debtor after a pre-confirmation dismissal of the case. *See, e.g., In re Nardello*, 514 B.R. 105, 113 (D.N.J. 2014); *In re Soussis*, 624 B.R. 559, 571-74 (Bankr E.D.N.Y. 2020); *In re Harmon*, No. ID-20-1168-LSG, 2021 WL 3087744, at *2, 3, 12 (B.A.P. 9th Cir. July 20, 2021).

The Court has reviewed and carefully considered the conflicting cases on this subject, which contain exhaustive discussions of the issue. The Court agrees with the Trustee's position, for the reasons stated in the *Nardello*, *Soussis*, and *Harmon* cases. The Trustee is entitled to retain the § 586(e)(2) percentage fee in this case, even though the case was dismissed without a plan being confirmed.

**V. Conclusion**

For the reasons stated in this Opinion, the Court will enter an order granting the Trustee's Motion in part, and denying it in part, and denying the relief sought by Findling discussed above.

The Court will order that the Trustee must pay to the Debtor all of the funds the Trustee has received in this case, from all sources, subject only to the following exceptions: first, the Trustee must pay any and all administrative expenses allowed under 11 U.S.C. § 503(b), including the allowed fees and expenses of the Debtor's attorney in the amount of $31,468.30; and second, the Trustee must retain the Trustee's percentage fee under 28 U.S.C. § 586(e)(2), calculated based on all funds received by the Trustee in this case.

**Signed on May 5, 2023**



/s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge